It please the court. My name is Abby McNaughton, counsel for appellant Mr. Peter Sepling. With the court's permission, I'd like to reserve two minutes for rebuttal. OK. Affected assistance of counsel requires an informed strategy. When counsel reveals to the court at sentencing that he does not know important information that could impact his client's sentence. There's a problem. Mr. Sepling. There is a problem. Mr. Houser, and I don't want to preempt what he's going to say, but I assume he's basically arguing from his brief that it wasn't ineffective assistance because I thought the brief he talks about what a great deal he ended up getting for Mr. Sepling. But given what the plea deal was, the plea agreement, how can you let's assume he can get past the first one? How can you get past the prejudice? Yes, your honor. So the information that the court did not consider was directly related to the thirty five fifty three a variance. We know that in drug cases, relative harmfulness of substances drives drug sentencing. This is why we sentence marijuana differently than we sentence heroin. But the district court acknowledged that or accepted, I should say, that the substance at issue was less harmful than the analog that it was being used in the guidelines. Who's in the district court already account for that fact? No, your honor. The court did not account for this fact, this fact in entirety, because the information that the court had at sentencing and again, in the twenty two fifty five opinion below was still not complete information about the harmfulness of this particular substance. The only information that the court had at sentencing was Mr. Sepling's own articulation of his personal high with the drug. That's entirely different in nature than the kind of competent empirical scientific D.A. indicated evidence that we are suggesting that counsel could have found and had a responsibility to find and present to the court. Go back to just what his question for a second. The actual sentence was one hundred and two months. Yes, your honor. The range was one hundred and eighty eight to two thirty five. How how can we how can we conclude that he suffered prejudice? Sounds like he got a great deal or it might be that the sentencing judge took all of those factors into account. Your honor, it'd be surprising that the harmfulness of the substance here could have accounted for that that much variance. That's what I was thinking. There's likely other factors that could have driven that, such as Mr. Sepling had no violence in his criminal history. The offensive issue is nonviolent. Mr. Sepling was very remorseful. He was a part of the three factors. Yes, your honor. And those factors will remain the same regardless of how harmful the judge that he was involved with was. No, your honor, because the harmfulness of the drug is directly related to the nature and seriousness of the offense. The court said, but as George said, the district court kind of discounted that thirty five fifty three a factor. And they got into the other individualized factors that you're going through now. And those will remain the same no matter how harmful or how mitigated the effect of the drug was. Your honor, the court said to Mr. Sepling, you've committed a serious crime here. And it's in particular the meth alone and that you put people in harm's way. And this is why I'm sentencing you. So it seems that the seriousness of the drug was on the court's mind at the time. And again, we know that in general and drug sentencing cases, the relative harmfulness of the substance does matter. The court was deprived, however, of any information to impeach the court's impression of what the court thought the substance was, which is its comparison was to ecstasy, which has a ratio two point five times that of cocaine. And so the only information that the court had to evaluate the harmfulness and then therefore the serious the nature and seriousness of Mr. Sepling's offense was that this drug was somewhat like, again, a substance that's considered two point five times more harmful than cocaine. The sentence was was in accordance with the plea agreement, wasn't it? There was a plea agreement. There was a plea agreement. Yes, your honor. What was this specific agreement? So the agreement was that Mr. Sepling, the 2013 GBL plea agreement was that Mr. Sepling would not be held accountable as a career offender. So that moved his exposure from two hundred forty to a range of two hundred thirty five to two hundred forty. What was the specific range that he agreed to? The plea agreement set him at two hundred thirty five to two hundred forty. He didn't agree to a specific range, but it took off. It took him from a category six to category five. And so is there anything to prevent the district court? If we said if we were to remand this case, anything to prevent the district court from imposing the same sentence? We would urge this court to instruct the lower court to only consider whether a lower sentence is warranted, given more complete information about the nature of the substance. We'd hope Mr. Sepling would not be penalized for raising these issues. I think the question was, couldn't the district court impose exactly the same sentence? Yes, your honor. The district court could do that. But but again, we just we think that the court, Mr. Sepling deserves for the court to hear this additional evidence and understanding the harmfulness. What is what additional factors would the court consider that would make the court issue a different sentence? Well, for example, your honor, methadone is considered to be substantially less potent than MDMA. The DEA itself has a document that references a study that indicates methadone is 50 percent potency. But that was a study of rats, right? That was a study of rats, your honor. But the DEA itself has taken its position in other litigation that it is the DEA's recommendation that methadone is treated as 50 percent potency. And then but the difficulty for the district court, if they were remanded, is there are circuit level cases that have adopted the 501 ratio. Your honor, those circuit court cases have upheld the ratio as reasonable, which is certainly possible. But for example, why would it be reasonable? Pardon? Why is that reasonable? 500 kilograms of marijuana, that's five and a half tons of marijuana. Now, would that be reasonable to make that equation? I'm not suggesting that ratio is reasonable. I'm suggesting that in the circuit court cases, they were upholding the lower court's finding of that particular ratio. But other circuits, for example, in the Marte case from the 11th Circuit, upheld a lower ratio given the DEA's own testimony from their expert, Dr. Prelow, that methadone was 50 percent potency. And additionally, there's, for example, another expert who testified that methadone is five fold less potent than MDMA. That was in the Chong case in which the court upheld a 200 to one ratio. But the guidelines currently have that as the ratio. And if the district court does not disagree as a policy matter that that's a reasonable amount, this district court could do exactly the same thing. Correct? Your honor, the guidelines have the 500 to one ratio for MDMA. But actually for methadone, there was an amendment last year. I'm aware of the amendment that suggests that it could be treated as a different differently. Correct. That it's in the class of synthetic cathinones with a 380 to one ratio. But the new amendment specifically references methadone as an example of something substantially less potent that would warrant a lower departure. OK. And let's why shouldn't we read the district court sentencing transcript as already have accounted for that. In fact, that's the kind of language the district court used it, accepted that it was a lesser potent drug. So where's the prejudice? Exactly the same viewpoints that exist in the law today are those that were expressed by the district court at the time of sentencing. And so harkening back to Judge McKee's question, how how can we say there's been prejudice here by counsel's lack of preparation from your point of view? Again, your honor, the district court made that statement about methadone having somewhat less of an impact, accepting the fact that it will have somewhat less of an impact based off of very little information. It also said that it thought the guidelines were too high. That's true, your honor. But that could there's a lot of reasons that could have factored into that. Again, the fact that Mr. Supley had no violence in his history. It seems very different question of whether the guideline is too high for the offense conduct as compared to the other thirty five, fifty three factors which go to his drug addiction, but also his criminal history, which but for the plea agreement he received would have resulted in a career offender designation. Correct. Yes, your honor. But the fact that the district court acknowledged how high the guidelines was goes to the anchoring problem caused by the guidelines. In this case, this the guidance communicated to the court that Mr. Supley's conduct was in the realm of something that of high as high as one hundred and eighty eight months. Had the court been provided with more adequate information, for example, had counsel negotiated with the government prior to sentencing and received a lower stipulation, which we think the government would be hard pressed not to do, given that they had stipulated in other cases to a two hundred fifty one ratio. Then Mr. Supley would have come in with a ratio with a bottom range starting at one hundred and fifty one. And again, that is that assuming there was acceptance responsibility that one fifty one. I don't believe so. No. And that was for how many kilos still at ten kilos, your honor. Had Mr. Supley then held account had the quantity agreement that upheld and Mr. Supley was only held accountable for three kilos kilos at a lower range. He would have been at the lower the low end of the range would be one hundred and ten. Let's turn if we could for a moment to that coordinated quote agreement. The language we have from the sentencing transcript is a comment of the defendant's understanding of what he thought his one of his attorneys had obtained some understanding from the government. But even if that were true, the court, by virtue of the plea agreement, was not bound by that three kilo amount. And in fact, there was sufficient evidence before the court. An unchallenged statement from the cooperating witnesses amount was 10. So how could we possibly conclude that would be a non frivolous motion in light of all the appeal? Rather, in light of those facts, your honor, the government does not agree is that the methadone, the agreement to roll the methadone conduct into the JBL plea agreement was not precluded by the JBL plea agreement language. Mr. Sepling is simply raising an issue about the scope of that agreement, that it should be that he should have been held accountable for three kilos instead of 10. Certainly, the district court would not have been bound by that agreement. But had the government and Mr. Sepling had the government either told probation that they were only prepared to prove three kilograms or told the court that they were only prepared to prove three kilograms. That assumes that the facts would have supported that. And in fact, the facts are contrary to that, based upon the unobjected to factual statement in the presentence report. So how could the government say that? Well, your honor, again, the fact that the presentence report wasn't objected to is a deficiency of Mr. Sepling's counsel. That counsel made the argument in made an argument to the district court about the three versus 10. And the district court adopted the presentence report. And so I don't think you can really say counsel was deficient there. Can you show your honor, but at a minimum, the district court did not resolve the district court should have inquired further when Mr. Sepling raised that issue and they and as did counsel and they just kind of let that in the district court never resolved it. But again, the only relevant point for this is that at the time that was a non frivolous issue for Mr. Sepling, that was a viable appeal issue for Mr. Sepling to pursue. Had the court if the court had concerns about the nature and scope of that agreement, that's the exact type of thing that the court could have resolved on remand. But Mr. Sepling was never given the opportunity to pursue that appeal issue. You say he was there for sentencing. I assume was the party to the person who negotiated the deal and would have known whether or not it was for 10 or for three. Yes, your honor. What about Mr. Noss? Was he he was part of that agreement, too. So both parties to the three versus 10 agreement were there in the courtroom. Pardon? Who's the other party? The defense attorney. Oh, no. So actually, Mr. Sepling, the second attorney was trying to get to whether or not the court knew that this discrepancy was there. But in the transcript, it was brought to the court's attention. The court knew that there was an allegation, at least that your client should only be responsible for three kilos and not 10 kilos. Yes, your honor. And again, I would reiterate the count that Mr. Sepling has maintained. Counsel did not communicate with him about this methadone conduct until minutes before his sentencing hearing that day. Mr. Sepling could not have been adequately prepared. Mr. Sepling admitted to the court that he was that counsel that his client and the prosecutor tried to educate him about the substance. He showed up at court that day not knowing basic information about the substance driving his client's sentence. A lawyer's inadequate in conclusion, a lawyer's inadequate consultation and preparation cuts at the integrity of judicial proceedings. I'm still looking at the the prejudice issue here and how he was prejudiced. And I I'm looking at the numbers. The range was 188 months to 235 months. That was the range that was recommended by probation. And I looked at a mid range of that of that guidance. And as I see it, he got about eight years off the mid range in a sense. So how is that prejudicial? I mean, that sounds like you got a pretty decent deal. I see my time has expired. May I respond to your question? OK, so first the he he came into sentencing with a 235 to 240 range. He got two points off down to the 188 of the new amendment that the court adopted. But again, your honor, this is not a case simply about the guidelines range. The guidelines communicated that overstated the severity of this behavior. And Mr. the court was willing to accept arguments in variance. And Mr. Sepling failed. Mr. Sepling's counsel failed to pursue any of these variance arguments. So if the court was willing and receptive of information about this substance and willing to vary down from that range, he would have varied further had he been provided with competent information. Thank you, sir. Good morning. May it please the court, William Houser, on behalf of the United States. At the time of the guilty plea in this case, Peter Sepling was a career offender with three prior drug selling convictions. We know that what it's obviously driving our amazing obvious, what's driving least my concern is this incredible it's almost a slapstick of a colloquy of proceeding at the sentence, whether the defense attorney comes in and goes, you know, I really don't know anything about this drug. Let my class have my client tell you what he feels like when he gets high. And the judge says, gee, I don't want to think about the drug either. Tell me, Mr. Sepling, what's your trip like? What kind of vibe are you getting from this? It's almost like a Saturday Night Live skit. It's incredible. Yes, it's well, judge, you see the government's leading with the prejudice prong of Strickland. We're not leading. We're not, we're not. Our first argument here isn't that counsel did the absolute best job that he could have done. I appreciate that. And that's why I started with my question though, but it's, and it may well be, if it were to go back, given the fact that judge considered that it wasn't really as potent as the guidelines would suggest that he get the same sentence. But maybe the judge would say, geez, if I really knew pharmacologically how relatively mild this was, and that this is a guideline that is just, maybe it's politically driven as opposed to pharmaceutically, pharmacologically driven, I would have cut him a bigger quote break than I cut him. That's certainly possible. And if it's possible, isn't that enough? The reasonable, reasonable probability, but doesn't that get her over the prejudice prong and the government's not harmed by that. If he gets the same sentence, he gets the same sentence. He's not going anywhere in the meantime. Judge, I would suggest that in this, in this collateral proceeding, Mr. Sepling has the burden of proof. I mean, he has to show that it's reasonably, reasonably probable that the result would have been different. And actually judge, I think that if we had gone down the road that counsel now suggests we should have, should have gone down in this case, that the result might've likely been different, but I think it would have been a higher sentence because the way this played out, the prosecutor and the judge really didn't have a sense of what this drug was other than what the probation office, the arm of the court was, was, was saying it was, which was 500 to one. Other courts have, have addressed this issue and several other courts have, as, as you probably know, have used reduced equivalent ratios. They have for methadone. They have, and this group did not, they've also used higher, I mean, they've also used the 500 to one ratio. So we have courts that have found 200 to one, 250 to one, 500 to one. And let's see, where does it stand now? I beg your pardon? Where does it stand now? I mean, has somebody arrived at a fair and appropriate equivalence? There's still no direct guideline relating specifically to methadone. I consulted with the department of justice on narcotics and dangerous drug section. There's no department policy on what, what the guideline or what the equivalent should be. We have no idea what, what we can tell courts that should be the appropriate or what science can tell the courts, what the appropriate equivalent should be. So it sounds like courts are going to sort of like pick figures out of the air. Well, that courts have discretion to do that, judge. It's got to be reasonable. It's got to be, it's got to be based upon something other than, geez, 400 is a round number, 380, that's kind of, that's kind of funky. I'm going to go with 400. Agreed. Agreed. We didn't have that in this case. So we show up, government shows up at sentencing and the court shows up at sentencing. There are no objections to the pre-sentence investigation report. Is this part of the problem though? It is. Because that's the first prong. And frankly, it just, it just seems in terms of the integrity of the proceeding, I would have sentenced people for 10 years. And I could not imagine imposing a sentence on someone, especially at this kind of time, without knowing more specifically, what is the impact of this drug? And therefore, what should the equivalent comparison be? I'd be embarrassed by it. At the end of the day, judge, judge Caputo accepted every representation made by counsel, every representation made by Mr. Seflin. Counselor didn't know what the heck he was doing. Okay. He accepted every one of Mr. Seflin's representations. And actually Mr. Seflin's representations are completely consistent with what the argument is now. Judge Caputo in denying the 2255 said, I accepted this and I imposed a sentence that was way, way below what the guideline range is, was. And what I was driving at judge is I think that when we sit here today and try to decide what the sentence would have been, if counsel had come in and said to the government, look government, this is a much less potent drug. It's 250 to one, or even the lowest level suggested here, 200 to one. And then we had had an agreement. The courts could still, first of all, accept what the probation office presented. In fact, the last time I was before this court in an oral argument, I was here following on a guilty plea in a public corruption case where the probation department imposed a four level, a high level decision maker role enhancement. The government wasn't pursuing that. At sentencing, the government presented no evidence in support of that. The court called witnesses sua sponte, asked questions about it, and then imposed the enhancement. And the government is then here in the court of appeals defending the district court because of the clearly erroneous standard. You know, this is a situation where it could have been a very different situation, but it's complete speculation to say what judge Caputo would have done or what the proper, what the proper equivalency was. So my, the point of this is that if counsel had done everything suggested here, that if the court had accepted the 200 to one ratio and the parties were all on the same page about the 200 to one ratio, judge Caputo certainly would have had much more reason to believe that, okay, this guideline now seems right on point. And the 200 to one ratio leads to a higher sentence than what, what actually was imposed in this case. Is it fair to say that at the sentencing, the government didn't challenge the representation that this substance methylone is less potent in some ways than ecstasy. Am I correct about that? You're correct about that. And, and, and my next question is, is, as I understand, this isn't really a case about whether the guideline level was accurately calculated. It was whether there was a very, the variance would have been greater. Is that what you understand it to be? Or do you think your adversary is making an argument about whether the guideline level at jump was wrong? I know she has, my, my adversary has reserved on this. I'll let her answer the last part of that. What? The Jersey term, the adjump is it? So I think, I think the argument is that the variance could have been greater. I think that's the argument. Because if the argument were that the guideline level was an inaccurate calculation, do we have a problem like they had in, in Molina? I know that Scott, the hyphenated name, the Supreme court's decision that says you've got to have the right guideline calculation, initial phase before you vary, also known as adjump. If that were the case, if we had an incorrect guideline calculation, I would say absolutely yes, we would have a problem here. But in this case, what's your position? Position is there's not an incorrect guideline calculation because the judge simply, he accepted what was agreed upon by the parties, what the probation office was recommending, and there's nothing in the case law that suggests that he's wrong. In fact, there are cases that suggest it could be right within the court's discretion to find a 500 to one ratio. But there were several courts that had already used a 200 to one ratio. I don't think so, judge. No, there were. No. There were some, there was some pending. There were two district court decisions that accepted the 200 to one roughly ratio at the time of the sentencing and the others, you know, didn't speak or had 500. It was, I think your adversary's representation, I think the case law says there were two at the time of sentencing, at the 200 to one. So I think maybe it's possible, judge. I don't recall exactly. It's either that or there, that counsel in cases in other districts were presenting those arguments at about the same time. This argument. I think that argument has also been made by your adversary, but also at the same time, there were courts using the 500 to one ratio at the time of sentencing. Correct. That's what the, as I understand your position, that's what the guidelines would have supported. Correct. Well, yes. I mean, the, what I'm suggesting is the court could have found 500 to one. The guidelines don't specifically say 500 to one. No, I'm aware of that, but that's, that's, that there was support for the judge's view and hence there was no error in its guideline calculation. Yes. That's, that's the government's position. There's no error in the government, in the, in the judge's guideline calculation. And this, it seems to me that this is a case about a burden of proof for one thing, because I would suggest, as I was, as I was starting to say, if we had done everything, if everything had been done in accordance with what counsel is now suggesting, the court, I think, I suggest would have been much more confident that these, that that calculation was an accurate calculation. I'm sorry, accurate or inaccurate? Accurate. Okay. If, if the judge, if judge Caputo had felt that, okay, we have now, there was a hearing or whatever that shows this 200 to one ratio, and he's confident that this is what the ratio should be. And this is what the guideline says should apply early on. The judge says in his, in his remarks at sentencing, the guidelines are usually pretty good and pretty on, on point. But in this case, they're not, I've seen thinking they're not fair and they're not just, but if he did find that they were on point at a 200 to one ratio, then we're looking at a guideline range that's higher than what the actual sentence that he, he got in this case. You think, yeah, so your argument is that the guidelines are accurate and, and, and that the relative potency of methadone and ecstasy is, is fairly represented in the guidelines. Judge, I would. I mean, as I see, you know, methadone is much, much weaker, I think, than ecstasy is. And I'm suggesting the same thing, Judge. I'm not suggesting to the contrary. And, and that's why I didn't say a word at sentencing. That's why I didn't say, judge, impose a guideline sentence. I didn't do that. The government never once asked the judge to impose a guideline sentence. And so, you know, we essentially said to the court, judge, and, and you can see essentially throwing up the hands and leaving it to the judge's discretion and please, judge, just impose a sentence that's fair here and, and impartial and, and, and try to account for disparate sentences. And that's, and the judge did the best that he could. And I suggest that he went below what would have been, he'd been, would have done even if everything done, everything suggested should have been done here was done. If we could turn for a moment to the claims concerning failure to file an appeal. Yes. And as I understand it, there are two issues. One is failure to file an appeal on the district court's failure to adjudicate an a purported agreement of the three to 10 kilo distinction. What is your response to that? Uh, what I would suggest judge is that there, first of all, there's no suggestion that there was a three to 10 kilo deal in this case. There were, as you know, there were two different cases here and defense count, neither defense counsel, nor Mr. Sepling came into court and said the government entered into a three kilo deal in this case. Um, and so this, this idea of, and for the record, the government disputes that there was a three kilo deal. And I mean, is it because of the, the size of the drug that was going to be considered as well from conduct? Is that where, is that where it's coming in? The 10 kilos? Yes. That's where it comes in. And so, you know, as I, I think that the, the record makes perfectly clear here that the government, uh, was trying to get Mr. Sepling out from under this career offender situation because these guidelines are, they're high and, uh, you know, it's, we're, we're obligated to uphold the constitution and the laws and department of justice policies. But in a case like this, where the guideline is unclear and giving a whole lot of discretion to the district court, and that gives the prosecutor the opportunity to come into court and say, listen, judge, do what's fair here. Uh, the guidelines, you know, we didn't even talk about the guidelines. But I was asking about this agreement. I was on. Okay. I'm sorry. So then you're saying there was no agreement. And as I understand the sentencing transcript, it was Mr. Sepling who said that he was under the impression that it was going to be three kilos, not 10. And it's in the context of a conversation he had with his lawyer in the other case, not with his lawyer in this case. And so the point if there had been an agreement, if I read the, the government's plea agreement correctly, that agreement wouldn't have been binding on the district court anyway, if there were facts to support a different, that would be, that would be the government's position. Judge, did you, I'm sorry. Just on that one other point on that, on the, uh, appeal issue. Um, you had, um, there was an argument about whether the district court erred and not giving acceptance responsibility. As I, as I understand their argument, their argument is it would be error for the district court to say per se, another arrest precludes you from acceptance or responsibility in reading the district court sentencing transcript. Can you say the district court did not per se preclude acceptance based on the prior arrest? Um, I can't say that judge. However, the record makes clear that both Mr. Sepling and his attorney specifically were indicated on the record that there were no objections to the pre-sentence report. He was asked specifically. Um, and, um, and you know, as a prosecutor, my concern was making sure the record was clear. And I asked the judge, would you please make sure the record is clear that neither Mr. Sepling nor his attorney have an objection. And they're saying that on plain error review would not be meritorious because if you look at the circumstances, including the court's consideration of basically post rehabilitation behavior. And even on clearly erroneous review, because he, he, he committed new criminal conduct and the case law says that the court can take away acceptance. Thank you. Thank you, judge. Yeah. On the claim of ineffective assistance of counsel, you, you briefly touched on it before, I believe, but could you, uh, again, state your position with regard to counsel's failure to investigate the relative potency of methadone with ecstasy? Judge, I almost made it to the zero. I made it to the zero before you asked me that question. I almost made it out of here without you asking me that. And so, uh, two more minutes saving the best. So, um, I have to say this, you've read, you've read the government's brief. You saw what judge Caputo had to say. My colleagues mooted me yesterday on this or two days ago on this same question you're asking me, and I found it difficult to stand before them and say with a straight face, uh, that this wasn't as judge McKee suggested, almost like a slapstick kind of a situation from the transcript. So the, however, having said that, I think we also have to look back and think and, and, and understand that this particular substance methadone was one of relatively new substances. It's a substance that, that, um, no one deals with much at all. And counsel did the best he could do. And in fact, well, I wouldn't go that far. Oh, okay. Okay. Okay. You might judge it. That was a poor choice of words. That was a, that was a, that was a poor choice of words, but he, he, his advocacy at the end of the day, um, achieved a great result for Mr. Shepling. It was, it was an outstanding result, uh, under the circumstances. And so, um, if you would really like me to answer that question, I will, um, I'm begging you that we not, I'm begging that you not ask me that, that you not require me to answer that question. Um, because I think the record speaks for itself and, um, And is one of the things you'd point to the fact that this very same law negotiated with the government to forego the career effect designation? Oh, absolutely. Oh, yes, yes, yes. Absolutely. I mean, that's, uh, when you look here at the, the result in this case, uh, the government didn't move to withdraw from its plea agreement with Mr. Shepling, which we could have done. He'd be facing it in this case, a career offender guideline. We withdrew the other charge, didn't pursue that. So he's not facing a career offender guideline in two cases. So this lawyer, he, he did a lot of good things. Um, and then we have the sentencing proceeding. So just that aside from the play, aside from that, Mrs. Lincoln, how'd you like the play? So, um, thank you. And, um, before I sit down, I did want to make a comment that, uh, I wanted to commend my adversaries on the excellent advocacy in this case. Yeah, I was, I second that motion. No, you did a great job. I'm not saying you're going to win, but just a great job. And as you've always been incredibly professional and fair, I haven't seen you that much, but it's a few times I have. It's always a joy to see you. And that comment is very much in keeping with your reputation. Thanks, Jeff. As to the way you handled the question, you didn't want to answer it. Judge Pointer is poised upon you in a very unfair and aggressive manner. May it please the court. Two points in response. First, in your, in response to your concern, Judge Swartz, uh, it is not our position that the guideline was in calculation and error. It is our concern that it was calculated without complete information. Thank you. And, um, secondly, to your concern, Judge Fuentes regarding inconsistencies across courts. It's important to keep in mind that our concern here is about counsel's responsibility to inform himself in this particular case, that counsel showed up to his client's sentencing hearing saying that he required, he was there to inform his client and on the prosecutor to educate him about the nature of the substance driving. That's part of one and no one, Mr. Houser is not even really giving you a serious pushback on that. Um, the point too, is what seems to be the sticking point here in the, in the prejudice part of that, I mean, in terms of my concern, Mr. Houser makes a good point that the burden is, is on you in the fact that it might be something to uphold the dignity of the sentencing proceeding. It's not really part of the equation that we have to look at, is it? Sorry, Your Honor, can you repeat your question? It's my concern that we should do something to uphold the concept of what a sentencing proceeding is, an informed sentencing, and, and, um, maybe that would suggest that we remand that just for resentencing, Mr. Houser's retort to that, I think would be, well, that's not really our test here. The test is whether or not there's a reasonable probability of a different, a different result on remand and given what the judge said about how he was not really taking the 500 to one ratio into consideration, he accepted Mr. Suffolk's reputation of, um, how buzzed he got when he took the drug. Um, there's not that much of a realistic possibility. Is that what you get a different result on remand? Yes, Your Honor. There certainly is a reasonable probability. Um, the record again indicates that, um, that the court below did not have complete information even when he wrote that 2255 opinion. Um, and so I see my time has ended, may I briefly finish? Um, and so again, that we would request that this court remand and the court may, um, grant, may, uh, submit for an evidentiary hearing in which the court below could look at further evidence and again, make a decision on a reasonable probability. Um, but we do think the record here shows that given his receptiveness to this type of information, the fact that he said he was willing to accept that it was somewhat less of an impact and that was the only information that he was provided that the fact that he was willing to vary. And then the amount of information, um, that he was precluded or the amount of information that he was not presented with. We do think that, um, this shows a reasonable probability. Maybe I missed the thrust of your, your, your answer. Had there been an investigation concerning the relative strength between methadone and ecstasy, would that investigation would have yield, yielded a different sentence in this case? Yes. The results of the investigation. Yes, Your Honor. Given again, the court's receptiveness to this type of information and you put it this way, had the science been out there, had courts use different ratios that could have been investigated by a counsel? Yes, Your Honor. So, um, on the one hand, uh, in response to the two cases that had adopted a 201 ratio prior to this case, those were MDMA cases. And so certainly the argument was readily available for court that for counsel, that the MDMA guideline was overstated. And then again, counsel in other cases were raising the concern about potency between, um, methadone and MDMA. So this information again was readily available. And, um, as we've said, the government itself had taken that position in other cases. And so, um, had counsel investigated, um, that information would have been brought forward. And again, significantly impeached the court's impression that this was just as serious as ecstasy or somewhat less serious than ecstasy. Thank you. You know, it's interesting. The red light, it really shows the difference between someone who's just graduated from a very fine law school and someone who is a very fine experienced litigator. When Ms. McNaughton's red light went off, her response is, geez, the red light just went off. And I answered that question when Mr. Houser's red light went off, geez, the red light went off. I was hoping I could get out of here without answering that damn question. Ms. McNaughton, one day you'll probably get to where he is. Geez, I was hoping I could get out of here without answering that question. Thank you very much. It really was a very fine argument on both sides. And, uh, with respect to that, Mr. Houser, as I've said, Ms. McNaughton, you've got a brilliant career ahead of you. And when you come back to clerk for, uh, for our court for judgment, I hope you'll stop by and I'm in the building. These two folks are in Jersey, but stop by and say hello. I'll take the matter into.